Ryan Tyz (CSB 234895)
Aaron Myers (CSB 200145)
TYZ LAW GROUP PC
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Phone: (415) 849-3578
rtyz@tyzlaw.com
amyers@tyzlaw.com

Attorneys for Plaintiff FTC - Forward
Threat Control, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FTC - FORWARD THREAT CONTROL, LLC<br><br>Plaintiff,<br><br>v.<br><br>DOMINION HARBOR ENTERPRISES, LLC; DOMINION HARBOR GROUP, LLC; MONUMENT PATENT HOLDINGS, LLC; MONUMENT IP FUND 1, LLC; and FTC SENSORS, LLC,<br><br>Defendants. | Case No. 5:19-cv-06590<br><br>**COMPLAINT FOR BREACH OF CONTRACT, CONVERSION, ACCOUNTING, UNJUST ENRICHMENT, AND QUANTUM MERUIT**<br><br>Jury Trial Demanded |

Plaintiff FTC - FORWARD THREAT CONTROL LLC ("Plaintiff") files this complaint against Defendants DOMINION HARBOR ENTERPRISES, LLC ("Dominion Harbor Enterprises"), DOMINION HARBOR GROUP, LLC ("Dominion Harbor Group"), MONUMENT PATENT HOLDINGS, LLC ("Monument Patent Holdings"), MONUMENT IP FUND 1, LLC ("Monument IP Fund"), and FTC SENSORS, LLC ("FTC Sensors") (collectively "Dominion Harbor"), and alleges as follows:

## NATURE OF THE CASE

1. This case is about a patent acquisition and assertion entity—Dominion Harbor—exploiting a California inventor and harming his small company.

2. Plaintiff is a small business formed and owned by Frank Zajac, an inventor of a group of patents originally assigned to Plaintiff (the "Patents").

3. Zajac approached David Pridham, Chief Executive Officer of Dominion Harbor Group, about selling the Patents to Dominion Harbor.

4. Pridham, in his role as CEO of Dominion Harbor Group, negotiated a Patent Purchase Agreement (the "Agreement") with Zajac.

5. As part of the Agreement, Plaintiff agreed to assign the Patents to Defendant FTC Sensors, a company Pridham created four days before signing the Agreement.

6. The Agreement required FTC Sensors to make minimum payments of $1 million to Plaintiff over two years.

7. The Agreement required FTC Sensors to pay 20% of gross licensing revenues and report licensing revenues received by Dominion Harbor.

8. The Agreement required FTC Sensors to return the Patents to Plaintiff after two years upon written demand by Plaintiff.

9. Pridham, in his role as CEO of Dominion Harbor Group, approved virtually all of the material terms of the Agreement before he created FTC Sensors.

10. Pridham added FTC Sensors as the contracting Dominion Harbor entity right before signing the Agreement.

11. Dominion Harbor has become well-known in the intellectual property industry for acquiring patents from inventors and holding those patents in shell companies to monetize them through licensing and litigation.

12. On information and belief, Dominion Harbor has formed over 50 related entities to hold and assert patents, and those entities have asserted over 150 patents in over 300 patent litigation matters.

13. Based on records filed with the Texas Secretary of State, all of the Dominion Harbor entities in this action are wholly owned by Dominion Harbor Enterprises, directly or indirectly, and all of them are managed and controlled by Pridham.

14. On information and belief, FTC Sensors was never sufficiently capitalized to

satisfy its payment obligations to Plaintiff under the Agreement.

15. On information and belief, Dominion Harbor is using the fiction of corporate separateness of FTC Sensors to avoid the payment obligations under the Agreement, when in reality there is a total unity of interest, ownership, control, and management of FTC Sensors and the other Dominion Harbor entities.

16. FTC Sensors failed to pay all amounts owed to Plaintiff, refused to provide records of licenses and royalty payments, and refused to return the Patents upon request as required under the Agreement.

17. When Plaintiff demanded the return of the Patents in writing, FTC Sensors refused to return them and instead held them hostage in an effort to force Plaintiff to forfeit its right to review licensing records and the payments it was owed under the Agreement.

18. As a result of FTC Sensors and the other Dominion Harbor entities' unlawful conduct and bad faith, Plaintiff has suffered many millions in damages.

19. Plaintiff asserts claims against each of the Dominion Harbor entities in this action, individually and collectively, for breach of contract, conversion, accounting, unjust enrichment, and quantum meruit.

## THE PARTIES

20. Plaintiff FTC - Forward Threat Control is a California limited liability company with its principal place of business at 234 Jason Way, Mountain View, California 94043.

21. Defendant Dominion Harbor Enterprises is a Texas limited liability company with its principal place of business in Dallas, Texas.

22. Defendant Dominion Harbor Group is a Texas limited liability company with its principal place of business in Dallas, Texas.

23. Defendant Monument Patent Holdings is a Texas limited liability company with its principal place of business in Plano, Texas.

24. Defendant Monument IP Fund is a Texas limited liability company with its principal place of business in Dallas, Texas.

25. Defendant FTC Sensors is a Texas limited liability company with its principal

place of business in Plano, Texas.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332 because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

27. This Court has specific personal jurisdiction over FTC Sensors because the Agreement between Plaintiff and FTC Sensors provides that "[t]he competent courts and tribunals situated in the State of California, USA shall have sole and exclusive jurisdiction in any dispute or controversy arising out of or relating to this Agreement."

28. This Court has specific personal jurisdiction over Dominion Harbor Group, Dominion Harbor Enterprises, Monument Patent Holdings, and Monument IP Fund pursuant to the Agreement's forum selection provision as well because (a) they are alter egos of FTC Sensors; (b) they are intended beneficiaries of the Agreement; (c) their conduct is so closely related to the contractual relationship between Plaintiff and FTC Sensors that it was foreseeable that they would be bound by the forum selection provision; (d) Dominion Harbor Group negotiated and accepted the forum selection provision in the course of negotiating the Agreement; and, (e) Dominion Harbor created and undercapitalized FTC Sensors and caused it to agree to the forum selection provision in a now apparent attempt to fraudulently and unfairly deprive Plaintiff of the ability to recover damages and other relief for FTC Sensors' breaches of the Agreement. This Court also has specific jurisdiction over the Dominion Harbor defendants because they orchestrated, directed and controlled the theft of the Patents from a California company.

29. This Court also has general personal jurisdiction over Dominion Harbor Group, Dominion Harbor Enterprises, Monument Patent Holdings, and Monument IP Fund because, on information and belief, (a) they have committed such purposeful acts and/or transactions in the State of California that they reasonably knew and/or expected that they could be haled into a California court as a future consequence of such activity; (b) they regularly and continuously transact business within California, including purchasing patents from California residents, marketing and licensing patents to California residents, entering credentialed relationships with

California-based licensees, and filing patent litigation in California, which activities are the essence of their business; (c) they have a continuing business presence in California; and (d) they have the requisite minimum contacts with California such that this venue is a fair and reasonable one. On information and belief, Dominion Harbor alter ego shell companies regularly appear as parties to litigation in California federal courts, having litigated patents in more than 20 actions in California in the last two and a half years alone, including ten cases in the Northern District. Because filing litigation is not merely incidental to Dominion Harbor's business, but instead is the essence of its business model, Dominion Harbor's frequent and repeated availment of California federal courts subjects it to general jurisdiction.

30. On information and belief, discovery from Dominion Harbor will reveal the nature of these and other contacts with the State of California and the overlapping and interconnected structure of the Dominion Harbor entities and their business operations in and affecting the State of California.

31. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and the Agreement has an exclusive California venue provision.

## INTRADISTRICT ASSIGNMENT

32. Because this action arose in Santa Clara County, it should be assigned to the San Jose Division of this Court pursuant to Local Rule 3.2(c) and (e).

## STATEMENT OF FACTS COMMON TO ALL COUNTS

33. Plaintiff is a California company formed by Frank Zajac, one of the three named inventors of the Patents. Zajac and the other inventors assigned their interests in the Patents to Plaintiff.

34. Dominion Harbor Group is in the business of monetizing patents by, among other things, acquiring patents and forming separate entities for the primary purposes of owning the patents and obtaining compensation for infringement.

35. Dominion Harbor's website describes Dominion Harbor as an intellectual property and investment firm that "helps protect and preserve intellectual property portfolios, maximizes

the values of these portfolios through licensing, and advises owners and investors on how to realize appropriate value for innovations and risk-taking in the patent market."

36. Dominion Harbor Group filed its certificate of formation with the Secretary of State of Texas on October 30, 2013. The certificate identifies as managing members three individuals: Pridham, Matthew DelGiorno, and Conner Mowles. The certificate is executed by DelGiorno. On information and belief, Pridham is the Dominion Harbor Group's Chief Executive Officer and DelGiorno is its President.

37. According to a Public Information Report filed by Dominion Harbor Group with the Secretary of State of Texas effective August 14, 2019, Dominion Harbor Group is a wholly-owned subsidiary of Dominion Harbor Enterprises, which is also its managing member.

38. Dominion Harbor's website likewise describes Dominion Harbor Enterprises as an intellectual property transaction and advisory firm that provides its clients with "a full spectrum of IP transaction and advisory services, and unrivaled access to highly targeted and credentialed licensees."

39. The Dominion Harbor website claims Dominion Harbor Enterprises has generated close to $1 billion in revenues for its clients, has transacted over 3,000 patent assets, has credentialed relationships with over 150 licensees, and has generated $400 million in patent acquisition and investment capital. On information and belief, this reference includes the Patents under the Agreement.

40. Dominion Harbor Enterprises filed its certificate of formation with the Secretary of State of Texas on January 20, 2016. The certificate identifies the company's sole managing member as Pridham. The certificate is executed by Mowles. According to a Public Information Report filed by Dominion Harbor Enterprises with the Secretary of State of Texas effective August 14, 2019, Pridham is Dominion Harbor Enterprise's Chief Executive Officer, DelGiorno is its President, and Monument Patent Holdings is its wholly-owned subsidiary.

41. Dominion Harbor's website describes an intellectual property acquisition company that acquires patents from individual inventors and claims this strategy has allowed the company to build a portfolio of intellectual property. On information and belief, this reference

includes the Patents under the Agreement.

42. Monument Patent Holdings filed its certificate of formation with the Secretary of State of Texas on December 13, 2013. The certificate identifies as Monument Patent Holding's managing members three individuals: Pridham, DelGiorno, and Mowles. The certificate is executed by DelGiorno.

43. According to a Public Information Report filed by Monument Patent Holdings with the Secretary of State of Texas effective March 12, 2018, Dominion Harbor Enterprises is the company's sole manager, and FTC Sensors was at that time its wholly-owned subsidiary.

44. According to a Public Information Report filed by Monument Patent Holdings with the Secretary of State of Texas effective September 9, 2019, Monument Patent Holdings changed its corporate structure after this dispute arose: FTC Sensors is no longer a direct subsidiary of the company, and the company has a new subsidiary, Monument IP Fund.

45. Monument IP Fund filed its certificate of formation with the Secretary of State of Texas on January 20, 2013. The certificate identifies Monument Patent Holdings as the company's sole manager. The certificate is executed by Mowles.

46. According to a Public Information Report filed by Monument IP Fund with the Secretary of State of Texas effective May 21, 2018, the company is wholly owned by Monument Patent Holdings, which is also the company's sole manager.

47. "FTC Sensors" came into existence on August 7, 2015 – four days before the Agreement was executed and after its terms were already negotiated and substantially approved by Dominion Harbor – when Dominion Harbor filed a certificate of amendment to change the name of another entity it had created three months earlier (Monument Tech Rho, LLC) to "FTC Sensors, LLC." The certificate of amendment is executed by Mowles. The certificate of formation of Monument Tech Rho, filed May 5, 2015, identifies Monument Patent Holdings as the company's sole manager, and is executed by Mowles.

48. According to a Public Information Report filed by FTC Sensors with the Secretary of State of Texas effective May 22, 2019, at that time, FTC Sensors was wholly owned by Monument Patent Holdings, which was also the company's sole manager.

49. According to a Public Information Report filed by FTC Sensors effective with the Secretary of State of Texas effective October 7, 2019, after this dispute arose, the company is now wholly owned by Monument IP Fund, which is now also the company's sole manager. On information and belief, this change in corporate structure was done at least in part to avoid the liabilities under the Agreement.

50. The documents that FTC Sensors filed with the Secretary of State of Texas do not identify a chief executive officer. However, Pridham is identified in the Agreement as the company's Chief Executive Officer and he executed the Agreement.

51. On information and belief, all of the Defendants are wholly-owned by Dominion Harbor Enterprises (directly or through a wholly-owned subsidiary), and Pridham controls and manages each Defendant: (a) Dominion Harbor Enterprises, as its Chief Executive Officer, Chairman, and managing member; (b) Dominion Harbor Group, as its Chief Executive Officer, Chairman, and managing member; (c) Monument Patent Holdings, as its Chief Executive Officer and through his control of its managing member Dominion Harbor Enterprises; (d) Monument IP Fund, through his control of its managing member Monument Patent Holdings; and (e) FTC Sensors, as its Chief Executive Officer and through his control of its original managing member Monument Patent Holdings and current managing member Monument IP Fund.

52. In addition to this unity of interest, ownership, control, and management, Defendants routinely act as if they are all one and the same. At the time Zajac approached Pridham about monetizing the Patents, "FTC Sensors" did not exist. Pridham held himself out to Zajac as the Chief Executive Officer of Dominion Harbor Group and negotiated with Zajac in that capacity, as demonstrated by, among other things, the signature block on his communications.

53. Even after FTC Sensors was formed a few days before the Agreement was executed, Pridham and others continued to interact with Zajac and Plaintiff for matters concerning the Agreement in their Dominion Harbor capacities. For example, Monica Gutierrez, in her capacity as an employee of Dominion Harbor, regularly communicated with Zajac for tax and business purposes. On information and belief, Gutierrez is not an employee of FTC Sensors. All of Zajac's communications with Pridham occurred via Pridham's Dominion Harbor email

account.

54. On information and belief, Dominion Harbor Group – not FTC Sensors – maintained the books and records of licenses and revenues related to the Patents, as indicated by Pridham's representation to Plaintiff that Dominion Harbor Group's financial controller would need to run the report to ascertain such information.

55. Dominion Harbor's failure to maintain genuine corporate separateness is also reflected in the Agreement itself. Sections 8.7 and 11.4 of the Agreement require that notices to FTC Sensors be emailed to Dominion Harbor at notice@dominionharbor.com.

56. Dominion Harbor Group, Dominion Harbor Enterprises, and Monument IP Fund all share the same address as their principal place of business: 300 Crescent Court, Suite 1550, Dallas, Texas 75201. Monument Patent Holdings and FTC Sensors also share the same address as their principal place of business: 1400 Preston Road, Suite 475, Plano, Texas 75093.

57. In addition, on information and belief, FTC Sensors was not sufficiently capitalized when it was formed or any time after. On information and belief, upon its formation on August 7, 2015, FTC Sensors had zero cash in its name, and it still had zero cash in its name when it signed the Agreement four days later on August 11, 2015. Despite agreeing to pay Plaintiff a minimum of $500,000 by October 15, 2016 and another $500,000 by October 15, 2017, the company was never capitalized with money to cover those obligations. Further, Pridham stated in an April 2016 court filing that FTC Sensors' revenues were less than $1 million, and therefore less than FTC Sensors' monetary obligations under the Agreement.

58. In view of the foregoing, on information and belief, each Dominion Harbor entity is liable to Plaintiff as FTC Sensors' alter egos for the damages Plaintiff sustained as a result of the complained of acts because (a) there is a such unity of interest and ownership between FTC Sensors and the Dominion Harbor entities that the separate personalities of the subsidiary companies and parent companies no longer exist; and (b) if FTC Sensors' acts are treated as those of it alone, an inequitable result will follow.

59. Dominion Harbor entities are the alter ego of FTC Sensors because, on information and belief, (a) the parent and subsidiary companies commingle funds and other assets; (b) the

parents own 100% of their respective subsidiaries; (c) the parents and subsidiaries use the same offices, equipment, and employees; (d) the parents have used the subsidiaries, in particular FTC Sensors, as a mere shell, instrumentality, agency, or conduit for their affairs; (e) FTC Sensors was not adequately capitalized for the corporate undertaking at any time during its existence; (f) the parents and/or subsidiaries disregarded corporate formalities such as holding board meetings, keeping corporate records, and acting through votes of the corporate board; (g) the parents and subsidiaries commingle their corporate records; (h) the parents and subsidiaries have identical managers and officers; (i) the parents diverted the subsidiaries' assets to the parents' uses; and, (j) any FTC Sensors funds were entirely siphoned off by its parents.

60. Fairness and equity compel such a conclusion because, on information and belief, Dominion Harbor is using FTC Sensors to (i) perpetrate a fraud, (ii) circumvent federal jurisdiction and venue statutes, and (iii) accomplish its wrongful and inequitable purposes of avoiding payment of the contractual obligations owed to Plaintiff because FTC Sensors' was never sufficiently capitalized to satisfy its obligation to pay the minimum amount of $1 million to Plaintiff as required by the Agreement.

61. In the alternative, the Dominion Harbor entities are vicariously liable for FTC Sensors' wrongful acts because they held FTC Sensors out in as an agent to act on their behalf and left Plaintiff with the reasonable impression that they would return the Patents after two years upon request. On information and belief, the Dominion Harbor entities acting in concert orchestrated and controlled the theft of Plaintiff's Patents.

## The Agreement

62. Between March 2015 and August 6, 2015, Pridham and Zajac negotiated the terms of an Agreement. Zajac initially proposed to sell the Patents to Dominion Harbor for an upfront payment. On April 3, 2015, Pridham responded:

> At this point we could not agree to an upfront offer for this portfolio but we would be able to agree to a promissory note structure tied to monetization. In this case the payment (say e.g., $500K) would be paid out as the patents are licensed (this tends to provide more certainty to the seller but does not provide the upside of a continuing back end). If this is of interest please let me know and we'll prepare an updated PPA.

63. On information and belief, the "we" in Pridham's statement refers to Dominion Harbor Group.

64. Between April and July 2015, Pridham and Zajac negotiated the terms of an agreement with a "promissory note structure tied to monetization" as Pridham had initially proposed, and also added guaranteed minimum payments over the first two years.

65. By the end of July 2015, Pridham and Zajac had agreed to nearly all of the material terms of the agreement.

66. On or about July 31, 2015, Pridham in his capacity as CEO of Dominion Harbor Group sent a proposed agreement with "***DHG DRAFT OF 07/31/2015***" in the header. On information and belief, "DHG" refers to Dominion Harbor Group.

67. Dominion Harbor's July 31, 2015 draft agreement contained all of the material terms of the Agreement, except one: Plaintiffs' option to repurchase the Patents. Specifically, there are no material differences between the July 31, 2015 draft agreement and the August 11, 2015 executed agreement with respect to the following material terms (among others):

   a. Plaintiff's assignment of the Patents to a Dominion Harbor entity;
   b. Dominion Harbor's payment to Plaintiff of 20% of gross recoveries from licensing and litigation;
   c. Dominion Harbor's guaranteed minimum payments to Plaintiff of $500,000 by October 15, 2016, and $500,000 by October 15, 2017;
   d. Dominion Harbor's obligation to pay interest on any late payments;
   e. Dominion Harbor's obligation to maintain adequate records of licensing and litigation activity, monies received from those activities, and monies owed to Plaintiff;
   f. Plaintiff's right to audit such records;
   g. Plaintiff's and Dominion Harbor's representations and warranties;
   h. the confidentiality provision;
   i. the relationship of the parties provision;

1     j.  the choice of law provision; and,

2     k.  the California forum selection provision.

3   68. The only material differences between the July 31, 2015 draft agreement and the August 11, 2015 executed agreement are the addition of Plaintiff's option to repurchase the Patents, and, to protect Plaintiff's ability to exercise that option, the addition of restrictions on Dominion Harbor's ability to assign or transfer the Patents or the Agreement.

  69. The parties intended and understood that Dominion Harbor Group would be responsible for ensuring the payment obligations under the Agreement were satisfied.

  70. The Patent Purchase Agreement was executed on August 11, 2015. A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

  71. As set forth in the Agreement, Plaintiff agreed to assign the Patents to FTC Sensors and to provide an executed assignment at the closing of the transaction. Plaintiff performed its obligations under the Agreement. A true a correct copy of the executed assignment agreement dated August 25, 2015 is attached hereto as **Exhibit 2**.

Guaranteed Cash Payments

  72. In exchange for Plaintiff agreeing to assign the Patents, FTC Sensors agreed to, among other things, pay Plaintiff (a) 20% of gross recoveries received from all of the Dominion Harbor entities from licensing and litigation on a quarterly basis commencing with the calendar quarter ending September 30, 2015, as set forth in section 3.4.1; and (b) "Guaranteed . . . Future Cash Payment[s]" of $500,000 per year for the first two years (for the periods of July 1, 2015 to June 30, 2016, and July 1, 2016 to June 30, 2017), with "true up payments" due no later than October 15, 2016 and October 15, 2017, respectively, as set forth in sections 3.4.2 and 3.4.3, in the event the cumulative payments provided for in section 3.4.1 do not satisfy the $500,000 guaranteed minimums for those periods.

  73. The first-year minimum payment amount was $500,000 and due to Plaintiff by October 15, 2016, pursuant to section 3.4.2.

  74. The second-year minimum payment amount was $500,000 and due to Plaintiff by October 15, 2017, pursuant to section 3.4.3.

75. FTC Sensors made only two payments to Plaintiff in 2016 for the 20% of gross recoveries due to Plaintiff pursuant to section 3.4.1: $6,921.40 on May 3, 2016, and $16,000 on September 1, 2016.

76. FTC Sensors failed to make the true-up payment of $477,078.60 to Plaintiff for the "Guaranteed Year 1 Future Cash Payment" of $500,000 that was due to Plaintiff by October 15, 2016, pursuant to section 3.4.2.

77. FTC Sensors made no payments to Plaintiff in 2017 for the 20% of gross recoveries due to Plaintiff pursuant to section 3.4.1.

78. FTC Sensors failed to make the true-up payment of $500,000 to Plaintiff for the "Guaranteed Year 2 Future Cash Payment" of $500,000 that was due to Plaintiff by October 15, 2017, pursuant to section 3.4.3.

79. As a result of FTC Sensors' breach of its payment obligations under sections 3.4.2 and 3.4.3, Plaintiff has been damaged in the amount of $977,078.60 plus interest, and the Dominion Harbor entities have been unjustly enriched.

80. Pursuant to section 3.5.1, Plaintiff is also entitled to pre-judgment interest of 5% per annum over the rate of interest that was charged by the San Francisco Federal Reserve Bank to member banks on the date the payments were due ($477,078.60 on October 15, 2016, and $500,000 on October 15, 2017), until such payments and all accrued interest is received by Plaintiff.

<u>Rights to Records and Audit</u>

81. Section 3.5.2 of the Agreement provides that FTC Sensors will maintain complete records "regarding the license, settlement, awards, or other Cash received respecting rights granted under, or damages awarded to compensate for infringement of, the Patents, or any of them, such records to contain sufficient information reasonably necessary for computation and/or confirmation of the payments, if any, due to Seller"; and will allow Plaintiff, upon 30 days' prior written notice, "to examine and audit . . . all such records and accounts as may contain information bearing on the amounts payable" to Plaintiff.

82. Plaintiff repeatedly asked FTC Sensors and Dominion Harbor Group to account

for the money due to Plaintiff under section 3.4.1 of the Agreement and to allow Plaintiff to examine the patent licenses FTC Sensors had granted to determine the amounts payable, but FTC Sensors refused. For example, in June 2018, Plaintiff asked Pridham to provide copies of the agreements that FTC Sensors had entered with certain companies it had licensed and the payments made by those companies to FTC Sensors or Dominion Harbor. Pridham did not produce any information. Seven months later, in January 2019, Pridham provided some limited information and told Plaintiff that Dominion Harbor Group's new controller would run a report, but he claimed he could not provide the agreements because of supposed confidentiality obligations. On information and belief, FTC Sensors is hiding information in the possession of Dominion Harbor Group it was obligated to provide Plaintiff under the Agreement based on confidentiality agreements between Dominion Harbor Group and another party.

83. FTC Sensors has continued to refuse to provide the license agreements and to fail to adequately account for the money received by FTC Sensors and Dominion Harbor due to Plaintiff under section 3.4.1.

Option to Repurchase the Patents

84. Section 8.4 of the Agreement provides that if, following January 1, 2018, the cash payments to Plaintiff pursuant to section 3.4.1 do not exceed $100,000 in any consecutive twelve month period, then Plaintiff shall have the option, upon written notice to FTC Sensors, to repurchase the Patents from FTC Sensors for a price that shall not exceed ten times the payments made by FTC Sensors to Plaintiff during such twelve month period. Section 8.4 further provides that FTC Sensors shall cooperate in good faith with Plaintiff to promptly affect such repurchase and assignment.

85. On April 12, 2018, Plaintiff provided written notice to FTC Sensors of Plaintiff's exercise of its option to repurchase the Patents. A true and correct copy of the notice is attached hereto as **Exhibit 3**.

86. As set forth in the notice, FTC Sensors made no cash payments to Plaintiff during the 12-month period ending April 12, 2018, and therefore Plaintiff was entitled to repurchase the Patents for zero dollars.

87. FTC Sensors refused to transfer the Patents back to Plaintiff as required by the Agreement. After several months of delay, Pridham provided a draft transfer agreement that in bad faith conditioned the return of the Patents on Plaintiff forfeiting its claim to the $1 million in Guaranteed Future Cash Payments as well as its right to obtain an accounting.

<u>Harm to Plaintiff Caused by Dominion Harbor's Actions</u>

88. In addition to failing to pay the $977,078.60 owed to Plaintiff for the guaranteed minimum payments under the Agreement, FTC Sensors' breach of the Agreement and unlawful conversion of the Patents by failing to promptly return the them to Plaintiff when due has harmed Plaintiff and impaired the value of the Patents.

89. Plaintiff demanded that Dominion Harbor return the Patents to Plaintiff on April 12, 2018, over a year and a half ago.

90. The Agreement contemplates a minimum of $2.5 million in revenue generation per year from the Patents. When Pridham negotiated the Agreement, he proposed to pay Plaintiff 20% of gross recoveries from licensing and litigation, with guaranteed minimum payments of $500,000 in each the first and second years, and FTC Sensors ultimately agreed to pay those amounts.

91. Dominion Harbor, acting through FTC Sensors, has wrongfully withheld, and unlawfully exercised dominion and control over, the Patents for a year and a half. As a result, Plaintiff has sustained a minimum of approximately $3,750,000 in additional damages to date, and likely significantly more, in an amount to proven through discovery and/or expert testimony.

92. On information and belief, Dominion Harbor has further impaired the value of the Patents and Plaintiff's ability to monetize them, including because the Patents expire in 2025.

93. In addition, Dominion Harbor's unlawful conduct has forced Plaintiff to expend significant time and effort, including attorneys' fees, to recover the Patents from Dominion Harbor, which was necessitated by Dominion Harbor's wrongful refusal to return them.

**FIRST CAUSE OF ACTION**

**(Breach Of Contract – Against All Defendants)**

94. Plaintiff hereby restates the allegations contained in the foregoing paragraphs as if

fully set forth herein.

95. Plaintiff and FTS Sensors entered into the written Patent Purchase Agreement dated August 11, 2015 (Exhibit 1).

96. Plaintiff performed all or substantially all of its obligations under the Agreement, including the assignment of the Patents to FTS Sensors (Exhibit 2).

97. FTC Sensors breached the Agreement by:

   a. failing to pay $477,078.60 to Plaintiff no later than October 15, 2016, as required by section 3.4.2;

   b. failing to pay $500,000 to Plaintiff no later than October 15, 2017, as required by section 3.4.3;

   c. failing to account for the amounts owing to Plaintiff and to allow Plaintiff to examine the patent licenses FTC Sensors had granted, as required by section 3.5.2; and

   d. failing to transfer the Patents back to Plaintiff upon Plaintiff's exercise of its repurchase option (Exhibit 3), as required by section 8.4.

98. As a direct and proximate result of FTC Sensors' breaches of the Agreement, Plaintiff has suffered damages in amounts to be proven at trial.

99. Plaintiff is entitled to prejudgment interest pursuant to section 3.5.1 of the Agreement as well as under Delaware and/or California law.

100. Plaintiff seeks specific performance.

**SECOND CAUSE OF ACTION**

**(Conversion – Against All Defendants)**

101. Plaintiff hereby restates the allegations contained in the foregoing paragraphs as if fully set forth herein.

102. Plaintiff has a right to possession and ownership of the Patents.

103. Dominion Harbor has intentionally interfered with Plaintiffs' property rights by refusing to promptly transfer the Patents back to Plaintiff upon Plaintiff's demand.

104. As a direct and proximate result of Dominion Harbor's conversion of the Patents,

Plaintiff has suffered damages in amounts to be proven at trial.

105. Plaintiff is entitled to recover all costs and expenses that Plaintiff incurs in connection with obtaining the return of the Patents, including, without limitation, reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**

**(Accounting – Against All Defendants)**

106. Plaintiff hereby restates the allegations contained in the foregoing paragraphs as if fully set forth herein.

107. On information and belief, FTC Sensors entered into license agreements and FTC Sensors and/or the other Dominion Harbor entities received money from their efforts to license the Patents, a portion of which is due to Plaintiff under section 3.4.1 of the Agreement.

108. The amount of money due to Plaintiff under section 3.4.1 is unknown to Plaintiff and cannot be ascertained without an accounting of the records that FTC Sensors was required to maintain under section 3.5.2 of the Agreement.

109. Plaintiff asked FTC Sensors and Dominion Harbor for an accounting of the money due to Plaintiff under section 3.4.1, and for payment of any amount found due, but they failed to do so, and continue to fail and refuse, to render such an accounting and to pay such sum.

**FOURTH CAUSE OF ACTION**

**(Unjust Enrichment – Against All Defendants)**

110. Plaintiff hereby restates the allegations contained in the foregoing paragraphs as if fully set forth herein.

111. Plaintiff conferred benefits on Dominion Harbor by assigning the Patents to FTC Sensors.

112. Dominion Harbor voluntarily accepted and retained the benefits conferred, including ownership of the Patents and the ability to license the Patents and collect royalty payments.

113. As a result of Dominion Harbor's breaches and wrongful acts, Dominion Harbor has been unjustly enriched at Plaintiff's expense, and Dominion Harbor's retention of the benefits

received is inequitable unless Dominion Harbor pays Plaintiff the value of the benefits.

114. Plaintiff is entitled to disgorgement of all ill-gotten gains by which Dominion Harbor have been unjustly enriched.

## FIFTH CAUSE OF ACTION

### (Quantum Meruit)

115. Plaintiff hereby restates the averments contained in the foregoing paragraphs as if fully set forth herein.

116. FTC Sensors requested that Plaintiff assign the Patents to FTC Sensors for FTC Sensors' benefit.

117. Plaintiff assigned the Patents to FTC Sensors as requested.

118. FTC Sensors benefited from Plaintiff's assignment of the Patents to FTC Sensors.

119. FTC Sensors has not paid Plaintiff for the Patents.

120. By not paying for the Patents, FTC Sensors has been unjustly enriched at Plaintiff's expense.

121. Plaintiff is entitled to the reasonable value of the Patents.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. An order that FTC Sensors specifically perform its contractual obligations to Plaintiff;

B. An order awarding Plaintiff damages against Defendants, jointly and severally, in an amount to be proven at trial;

C. An order requiring Defendants to assign the Patents to Plaintiff;

D. An accounting of the amounts owed to Plaintiff under the Agreement;

E. Disgorgement of all ill-gotten gains by which Defendants have been unjustly enriched;

F. An order awarding prejudgment and post-judgment interest;

G. All costs and expenses that Plaintiff incurs in connection with this action,

including, without limitation, reasonable attorneys' fees and costs; and,

H. All other relief, in law or in equity, to which Plaintiff may be entitled, or which the Court deems just and proper.

Dated: October 14, 2019                Respectfully submitted,

*/s/ Ryan Tyz*
Ryan Tyz

Attorneys for FTC SENSORS, LLC

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury as to all issues so triable in this action.

Dated: October 14, 2019                Respectfully submitted,

*/s/ Ryan Tyz*
Ryan Tyz

Attorneys for FTC SENSORS, LLC