1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FTC - FORWARD THREAT CONTROL, LLC, <br><br>                    Plaintiff, <br><br>          v. <br><br> DOMINION HARBOR ENTERPRISES, LLC; DOMINION HARBOR GROUP, LLC; MONUMENT PATENT HOLDINGS, LLC; MONUMENT IP FUND 1, LLC; and FTC SENSORS, LLC, <br><br>                    Defendants. | Case No.  5:19-cv-06590-EJD <br><br> **ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC, DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING JURISDICTIONAL DISCOVERY** <br><br> Re: Dkt. No. 32, 51 |

        This is a suit for breach of contract.  Plaintiff FTC-Forward Threat Control, LLC

("Forward Threat") agreed to assign its patents to Defendant FTC Sensors, LLC ("FTC Sensors")

and in turn, FTC Sensors agreed to pay Forward Threat licensing revenues.  Forward Threat did

not receive the contractually agreed upon payments, and this lawsuit ensued.  Presently before the

Court is Defendants Dominion Harbor Enterprises, LLC ("DHE"), Dominion Harbor Group, LLC

("DHG"), Monument Patent Holdings, LLC ("MPH") and Monument IP Fund 1, LLC's ("MIPF")

(collectively "Movants") motion to dismiss pursuant to Rule 12(b)(2) for lack of personal

jurisdiction.  Dkt. No. 32.  Movants, who are not parties to the contract, represent that they are

Texas LLCs with offices and operations in Texas, and that they lack the requisite minimum

contacts with California to confer this Court with personal jurisdiction.  Movants' jurisdictional

United States District Court
Northern District of California

facts are presented primarily through the declaration of Matthew DelGiorno, President of DHE. Forward Threat opposes the motion and requests leave to conduct jurisdictional discovery. Dkt. No. 34. Pursuant to Civil Local Rule 7-1(b), the Court finds it appropriate to take this matter under submission for decision on the basis of the briefing filed by the parties, without oral argument. For the reasons discussed below, Movants' motion will be denied without prejudice to renew the motion after Forward Threat has completed jurisdictional discovery.

## I.    BACKGROUND

### A.    The Agreement

Plaintiff Forward Threat is a small business formed and owned by Frank Zajac ("Zajac"). Compl. ¶ 2. Zajac (along with two others) is the named inventor of a group of six patents relating to threat sensor technology. *Id*. These patents were assigned to Forward Threat (the "Patents"). *Id*. Defendant DHG is in the business of monetizing patents by, among other things, acquiring patents and forming separate entities for the primary purposes of owning the patents and obtaining compensation for infringement. *Id*. ¶ 34.

Between April and July of 2015, Zajac[1] and David Pridham ("Pridham"), Chief Executive Officer of DHG, negotiated a Patent Purchase Agreement (the "Agreement"). *Id*. ¶¶ 3, 64. Initially, Zajac proposed to sell the Patents. *Id*. ¶ 62. Later, Zajac and Pridham negotiated a "promissory note structure tied to monetization" and guaranteed minimum payments over two years. *Id*. On or about July 31, 2015, Pridham, in his capacity as CEO of DHG, sent Forward Threat a proposed agreement marked "DHG DRAFT OF 07/31/2015" that incorporated these payment terms. *Id*. ¶ 66; Ans. ¶ 66. During the negotiations, the drafts of the Agreement left blank the name of the entity that would acquire the Patents. DelGiorno Decl. ¶¶ 9, 17.

The Agreement was executed on August 11, 2015. Compl. ¶ 70, Ex. 1. As set forth in the Agreement, Forward Threat agreed to assign the Patents to Defendant FTC Sensors, an entity

---

[1] Zajac's counsel communicated with Pridham via email. DelGiorno Decl. ¶ 7.

1    Pridham had created four days prior.  *Id*. ¶¶ 5, 71.  FTC Sensors had previously been named

2    Monument Tech Rho ("MTR").  DelGiorno Decl. ¶ 5.  FTC Sensors is a Texas limited liability

3    company with its principal place of business in Plano, Texas.  Compl. ¶ 47.

4         The Agreement attached and incorporated by reference a Patent Assignment, which

5    provided in pertinent part that Forward Threat "does hereby sell, transfer, convey, assign and

6    deliver to Assignee all of Assignor's right, privilege, title and interest in, to and under the Patents .

7    . . to be held by Assignee for Assignee's own use and enjoyment" and for the use and enjoyment

8    of Assignee's "legal representatives." Dkt. No. 9-1 at 16.  In exchange, FTC Sensors agreed to,

9    among other things, pay Forward Threat (a) 20% of gross recoveries received from licensing and

10   litigation on a quarterly basis commencing with the calendar quarter ending September 30, 2015,

11   and (b) "Guaranteed . . . Future Cash Payment[s]" of $500,000 per year for the first two years (for

12   the periods of July 1, 2015 to June 30, 2016, and July 1, 2016 to June 30, 2017), with "true up

13   payments" due no later than October 15, 2016 and October 15, 2017, respectively.  Compl. ¶ 72.

14   The Agreement included a provision requiring FTC Sensors to maintain complete records for the

15   computation and confirmation of payments due to Forward Threat and allowing Forward Threat

16   "to examine and audit" all of FTC Sensors's records and accounts "as may contain information

17   bearing on the amounts payable" to Forward Threat.  *Id*. ¶ 81.  The Agreement required FTC

18   Sensors to return the Patents to Forward Threat after two years upon written demand by Forward

19   Threat.  *Id*. ¶ 8.

20        The Agreement included a forum selection clause providing that California courts shall

21   have "sole and exclusive jurisdiction in any dispute or controversy arising out of or relating to" the

22   Agreement.  Agreement § 8.6.  Further, the Agreement specified that the performance and

23   interpretation of the Agreement "shall be governed by the substantive law of the State of

24   Delaware, USA, exclusive of its choice of law rules."  *Id*.

25

26

27   ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC,
     DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND
28   MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING
     JURISDICTIONAL DISCOVERY

United States District Court
Northern District of California

1    Pridham, in his role as CEO of DHG, approved virtually all of the material terms of the

2    Agreement before he created FTC Sensors.  Compl. ¶¶ 9, 47.

3        **B.        The Alleged Breach of Agreement**

4        FTC Sensors allegedly breached the Agreement in three respects.  *Id*. ¶ 97.  First, FTC

5    Sensors failed to make the contractually required payments.  *Id*. ¶ 16.  FTC Sensors made only

6    two payments to Forward Threat in 2016:  $6,921.40 on May 3rd and $16,000.00 on September

7    1st.  *Id*. ¶ 75.  FTC Sensors failed to make the "true-up" payment for 2016.  *Id*.  ¶ 76.  FTC

8    Sensors made no payments in 2017.  *Id*. ¶¶ 77-78.[2]

9        Second, FTC Sensors refused to account for the money due to Forward Threat and would

10   not allow Forward Threat to examine and audit FTC Sensors's records.  *Id*. ¶ 82.  FTC Sensors

11   acknowledges that Forward Threat asked for copies of FTC Sensors's license and settlements

12   agreements.  Answer ¶ 82.  FTC Sensors maintains, however, that the agreements have

13   confidentiality provisions that prohibit them from being provided to Forward Threat.  *Id*. ¶ 83.

14       Third, FTC Sensors refused to transfer the Patents back to Forward Threat.  *Id*. ¶ 87.

15   When Forward Threat demanded the return of the Patents, "FTC Sensors refused to return them

16   and instead held them hostage in an effort to force [Forward Threat] to forfeit its right to review

17   licensing records and the payments it was owed under the Agreement."  *Id*. ¶ 17.[3]

18       Forward Threat asserts claims against each of the Defendants named in this action,

19   individually and collectively, for breach of contract, conversion, accounting, unjust enrichment,

20   and quantum meruit.[4]  Although FTC Sensors is the only Defendant who signed the Agreement,

United States District Court
Northern District of California

---

[2] FTC Sensors admits that it did not make "true-up" payments and did not make payments in 2017.  Answer ¶¶ 75-78, 129.  Movants assert, however, that Forward Threat agreed in writing that it had released the claim for further payments, and therefore FTC Sensors owes Forward Threat nothing.  Reply at 8.

[3] There has been no return transfer of the Patents.  According to Movants, Forward Threat has reneged on its agreement to sign the Transfer Agreement.  Reply at 8.

[4] Pridham is not named as a Defendant.

CASE NO.: 5:19-CV-06590-EJD
ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC, DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING JURISDICTIONAL DISCOVERY

1    Forward Threat alleges that all of the other Named Defendants are alter egos of FTC Sensors, or

2    alternatively, are vicariously liable for FTC Sensors's actions. *Id.* ¶¶ 59, 60.

3       **C.    Jurisdictional Allegations**

4       Forward Threat alleges that this Court has specific personal jurisdiction over the Movants

5    pursuant to the Agreement's California forum selection provision because (a) they are alter egos of

6    FTC Sensors; (b) they are intended beneficiaries of the Agreement; (c) their conduct is so closely

7    related to the contractual relationship between Forward Threat and FTC Sensors that it was

8    foreseeable they would be bound by the forum selection provision; (d) DHG negotiated and

9    accepted the forum selection provision in the course of negotiating the Agreement; and (e)

10   Defendants created and undercapitalized FTC Sensors and caused it to agree to the forum selection

11   provision in an attempt to fraudulently and unfairly deprive Forward Threat of the ability to

12   recover damages and other relief for breach of the Agreement. *Id.* ¶ 28.

13      When negotiations over the Agreement began, only DHG and Defendant MPH existed.

14   MPH is a "litigation affiliate" of DHG. McHale Decl., Exs. 1, 7-8. In May 2015, while

15   negotiations over the Agreement were ongoing, MPH formed MTR, with Pridham as CEO and

16   MPH as MTR's sole manager. *Id.*, Ex. 12. MTR was to acquire a patent portfolio when the

17   appropriate opportunity presented itself and was not capitalized at its founding. DelGiorno Decl.

18   ¶¶ 25, 28. In early August 2015, which was after the $1 million guaranteed payment and forum

19   selection clause had been added to the Agreement, MTR was renamed to FTC Sensors and

20   designated by Pridham to hold Forward Threat's Patents. *Id.* ¶¶ 23, 26. Pridham is the CEO of

21   DHG, MPH and FTC Sensors. Answer ¶ 51.

22      Approximately five months after the Agreement was executed, DHG became the wholly

23   owned subsidiary of Defendant DHE, a holding company. McHale Decl., Exs. 16, 19. DHE, in

24   turn, formed MIPF. *Id.*, Ex. 20. Pridham is the CEO and sole managing member of DHE. *Id.*

25   Exs. 16, 19; Answer ¶ 51. DHE next became the sole managing member and parent entity for

CASE NO.: 5:19-CV-06590-EJD
ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC,
DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND
MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING
JURISDICTIONAL DISCOVERY

5

United States District Court
Northern District of California

DHG, MPH and MIPF. *Id.* In May 2019, more structural changes were made. This time, FTC Sensors ceased to be wholly owned and managed by MPH and became wholly owned and managed by MIPF. *Id.*, Exs. 15, 21. In turn, MIPH became wholly owned and managed by MPH. *Id.* Although the corporate relationships among the Defendants has changed over time, Pridham has kept a role in each entity:

- DHE, as its CEO and managing member;
- DHG, as its Chairman, CEO and managing member;
- MPH, as its CEO and through his position as a managing member of DHE;
- MIPF, as its CEO and through his position as a managing member of MPH; and
- FTC Sensors, as its CEO and through his position as a managing member of MPH and current managing member of MIPF.

*Id.*, Exs. 1-21. Forward Threat alleges that the Defendants collectively "orchestrated, directed and controlled the theft of the Patents." Compl. ¶ 28.

Forward Threat alleges that Movants are the alter ego of FTC Sensors because, on information and belief, (a) the parent and subsidiary companies commingle funds and other assets; (b) the parents own 100% of their respective subsidiaries; (c) the parents and subsidiaries use the same offices, equipment, and employees; (d) the parents have used the subsidiaries, in particular FTC Sensors, as a mere shell, instrumentality, agency, or conduit for their affairs; (e) FTC Sensors was not adequately capitalized for the corporate undertaking at any time during its existence; (f) the parents and/or subsidiaries disregarded corporate formalities such as holding board meetings, keeping corporate records, and acting through votes of the corporate board; (g) the parents and subsidiaries commingle their corporate records; (h) the parents and subsidiaries have identical managers and officers; (i) the parents diverted the subsidiaries' assets to the parents' uses; and (j) any FTC Sensors funds were entirely siphoned off by its parents. Compl. ¶ 59.

CASE NO.: 5:19-CV-06590-EJD
ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC, DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING JURISDICTIONAL DISCOVERY

6

Alternatively, Forward Threat alleges that this Court has general personal jurisdiction over the Movants because they purchased patents from California residents, marketed and licensed patents to California residents, entered credentialed relationships with California-based licensees, and filed patent litigations in California. *Id*. ¶ 29.  According to Forward Threat, the Movants regularly appear as parties to litigation in California federal courts, having litigated patents in more than 20 actions in California in the last two and a half years alone, including ten cases in the Northern District. *Id*. ¶ 29.

## II.    FORWARD THREAT'S ADMINISTRATIVE MOTION

Approximately two months after the Movants filed their reply brief, Forward Threat filed an administrative motion for leave to file supplemental evidence and a surreply.  Dkt. No. 51. The supplemental evidence consists of evidence obtained through discovery which Forward Threat now offers to support jurisdictional allegations in the Complaint.  The surreply contains legal arguments to rebut points Movants purportedly raised for the first time in their reply.  Movants oppose the motion for two reasons.  First, Movants contend the motion is untimely, having been filed over two months after they filed their reply brief and over two weeks after the motion to dismiss was taken under submission by the Court.  Second, Movants contend that there is no good cause to warrant consideration of the supplemental evidence and arguments.

The administrative motion for leave to file supplemental evidence obtained through discovery is granted.  The supplemental evidence was not produced until April 2 and 3, 2020, after briefing on the motion to dismiss was completed.  The supplemental evidence is relevant to the jurisdictional issues raised in the motion to dismiss and Forward Threat was reasonably diligent in filing its administrative motion to bring this new evidence to the Court's attention.  The administrative motion to file a surreply is denied, as is Movants' request to file a brief in response to the surreply.  The Court does not require any additional briefing on the legal arguments at this time.

CASE NO.: 5:19-CV-06590-EJD
ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC, DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING JURISDICTIONAL DISCOVERY

United States District Court
Northern District of California

### III.   STANDARDS

Federal Rule of Civil Procedure 12(b)(2) allows a party to challenge the Court's personal jurisdiction over another party.  "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  If a court decides the motion without an evidentiary hearing, "the plaintiff need only make a prima facie showing of the jurisdictional facts."  *Id.*  (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127–28 (9th Cir. 1995)); *see also Pelican Commc'ns v. Schneider*, No. 14-4371 EMC, 2015 WL 527472, at *2 (N.D. Cal. Feb. 6, 2015).  In such cases, the inquiry is whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  A prima facie showing means that a plaintiff demonstrates facts that, if true, would support jurisdiction over the defendant.  *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  Uncontroverted allegations in the plaintiff's complaint must be taken as true, and any conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.  *Schwarzenegger*, 374 F.3d at 800; *see also Pelican Commc'ns*, 2015 WL 527472, at *2 (court may not assume the truth of allegations in a complaint which are contradicted by affidavit).

A court's power to exercise jurisdiction over a party is limited by both statutory and constitutional considerations.  First, a long-arm statute must confer jurisdiction over a defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996)).  California's long arm statute is coextensive with the limits of due process.  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Therefore, the jurisdictional analyses under California law and federal law are the same.  *Nuance Comm'ns v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010).

CASE NO.: 5:19-CV-06590-EJD
ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC,
DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND
MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING
JURISDICTIONAL DISCOVERY

8

1        Second, for a court to exercise personal jurisdiction over a nonresident defendant

2    consistent with due process, that defendant must have "certain minimum contacts" with the

3    relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair

4    play and substantial justice."  *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v.*

5    *Washington*, 326 U.S. 310, 316 (1945)); *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano*

6    *Cnty.*, 480 U.S. 102, 109 (1987) ("[T]he constitutional touchstone" of the determination whether

7    an exercise of personal jurisdiction comports with due process "remains whether the defendant

8    purposefully established 'minimum contacts' in the forum State.") (quoting *Burger King Corp. v.*

9    *Rudzewicz*, 471 U.S. 462, 474 (1985)).

10       Under the minimum contacts test, personal jurisdiction can be either "general" or

11   "specific."  *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001) (per curiam), *abrogated on*

12   *other grounds by Daimler AG v. Bauman*, 571 U.S. 117 (2014).  "A court may exercise specific

13   jurisdiction where the cause of action arises out of or has a substantial connection to the

14   defendant's contacts with the forum."  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain*

15   *Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (citing *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)).

16   "Alternatively, a defendant whose contacts are substantial, continuous, and systematic is subject to

17   a court's general jurisdiction even if the suit concerns matters not arising out of his contact with

18   the forum."  *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9

19   (1984)).

20   **IV.   DISCUSSION**

21       Forward Threat asserts three bases for this Court to exercise personal jurisdiction over the

22   Movants.  First, Forward Threat contends that under Ninth Circuit precedent, *Manetti–Farrow,*

23   *Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988)), the forum selection clause

24   binds the Movants even though they are not signatories to the Agreement.  Second, Forward

25   Threat contends that the Movants are subject to the Court's jurisdiction as alter egos of FTC

United States District Court
Northern District of California

1    Sensors.  Third, Forward Threat argues that Movants are subject to the Court's general jurisdiction

2    because they are effectively at home here.  Forward Threat reasons that Movants, through their

3    patent holding subsidiaries, are in the business of regularly litigating patents against California

4    companies in California courts.  Forward Threat also requests the opportunity to conduct

5    jurisdictional discovery.

6         **A.   Applicability of Forum Selection Clause to Nonsignatories Under _Manetti-Farrow_**

7         Forward Threat contends that Movants are bound by the forum selection clause in the

8    Agreement, even though they are not signatories to the Agreement.  In doing so, Forward Threat

9    relies on a collection of cases that stand for the general proposition that "[a] forum-selection

10   clause in an agreement extends to 'a range of transaction participants, parties and non-parties.'"

11   _Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc._, 108 F. Supp. 3d 816, 822 (N.D. Cal. 2015)

12   (quoting _Manetti–Farrow,_ 858 F.2d at 514 n. 5).

13        In _Manetti-Farrow_, the plaintiff filed suit in the United States against a domestic

14   corporation, its European parent corporation and various officers and directors of the corporate

15   entities.  The plaintiff alleged that defendants had unlawfully interfered with plaintiff's exclusive

16   dealership agreement with the domestic corporation.  The district court dismissed the case, holding

17   that a forum selection clause in the exclusive dealership agreement designating Florence, Italy as

18   the forum applied to all defendants.  On appeal, the plaintiff argued among other things, that the

19   forum selection clause only applied to the subsidiary as the signatory to the agreement and not the

20   parent corporation.  _Manetti-Farrow_, 858 F.2d at 514, n.5.  The Ninth Circuit rejected the

21   argument, reasoning that the alleged conduct of the parent corporation was "so closely related to

22   the contractual relationship that the forum selection clause applie[d] to all defendants."  _Id._

23        In response, Movants argue that the choice of law provision in the Agreement specifies

24   that the substantive law of Delaware, not California, governs the performance and interpretation of

25   the Agreement, and that the Third Circuit (which encompasses Delaware) rejected _Manetti-_

26

27   CASE NO.: 5:19-CV-06590-EJD
     ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC,
     DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND
28   MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING
     JURISDICTIONAL DISCOVERY

United States District Court
Northern District of California

*Farrow* in *Dayhoff v. H.J. Heinz,* 86 F.3d 1287, 1296 (3d Cir. 1996).  In *Dayhoff*, the Third Circuit held that a forum selection clause in a distribution agreement "can be enforced only by the signatories to those agreements . . . and we decline to follow the reasoning of … the Ninth Circuit in *Manetti-Farrow*."  *Id.*  This holding, however, was not based on Delaware law.  As such, *Dayhoff* does not govern the outcome in this case.

        In any event, the Ninth Circuit's *Manetti-Farrow* decision does not govern this case for a different reason.  The plaintiff in *Manetti-Farrow* was a signatory to a forum selection clause.  Plaintiff sought to avoid, not to enforce, the clause against a non-signatory parent corporation.  The non-signatory parent corporation succeeded in enforcing the forum selection clause against plaintiff.  Personal jurisdiction over the non-signatory parent corporation was not at issue.  In contrast, Forward Threat is relying on a forum selection clause as a basis for this Court to exercise personal jurisdiction over Movants even though they are not signatories to the Agreement.  As such, this case is clearly distinguishable from *Manetti-Farrow*.

         Although personal jurisdiction was at issue in *Ultratech*, that case is also distinguishable from the instant action.  In *Ultratech*, the court held that a corporate officer who signed a contract on behalf of his company was subject to the forum selection clause contained therein.  *Ultratech*, 108 F. Supp. 3d at 823.  The *Ultratech* court reasoned that the forum selection could be enforced against the officer in his individual capacity because the claims against the officer related to the contractual relationship and the officer was accused of subverting the very agreement he signed.  *Id*.  The *Ultratech* court concluded that because the officer was subject to the forum selection cause, the officer had consented to personal jurisdiction in the designated forum, regardless of the scope of his contacts with that forum.  *Id.*  Here, Pridham, who is not a named Defendant, signed the Agreement on behalf of FTC Sensors, not the Movants.  Dkt. No. 9-1 at 13.  Therefore, *Ultratech* is not controlling.

        The instant action is also distinguishable from the myriad of other cases relied on by

Forward Threat:  not one of them involved a signatory to a forum selection clause affirmatively bringing suit in the specified forum against a nonsignatory that was not otherwise subject to personal jurisdiction in that forum.  In *Key Equip. Fin. v. Barrett Bus. Servs.*, No. 19-5122 RBL, 2019 WL 2491893 (W.D. Wash. June 14, 2019), the plaintiff sued the defendant in the state where it was headquartered.  Personal jurisdiction was thus not at issue.  Instead, the defendant moved to dismiss for *forum non conveniens*.  The *Key Equip. Fin.* court held that the plaintiff was bound by a forum selection clause even as a non-signatory to the agreement and accordingly granted defendant's motion.  Personal jurisdiction was also not at issue in *Home Sav. of Am. v. FTI Consulting, Inc.*, No. 11-2641 IEG, 2012 WL 13175961 (S.D. Cal. Feb. 1, 2012).  There, the defendants relied on a forum selection clause to obtain dismissal for improper venue.  Likewise, in *Univ. Ops. Risk Mgmt., LLC v. Global Rescue LLC*, No. 11-5969 SBA, 2012 WL 2792444 (N.D. Cal. Jul. 6, 2012), personal jurisdiction over the defendant was not at issue.  Rather, the defendant sought to enforce a forum selection clause against the plaintiff.  The court granted the motion, reasoning that the plaintiff was bound by a forum selection clause, despite being a non-signatory, because plaintiff's conduct was "closely related to the contractual relationship" of the individual plaintiffs and defendant.  *Id*.  In *White Knight Yacht, LLC v. Certain Lloyds at Lloyd's London & Other London Mkt. Insurers*, 407 F. Supp. 3d 931 (S.D. Cal. 2019), the plaintiff sought to avoid a forum selection clause, arguing that it was not a signatory to the agreement.  Likewise, in *Sharp Elecs. Corp. v. Hitachi Ltd. (In re Cathode Ray Tube (CRT) Antitrust Litig.)*, No. 07-5944 SC, 2014 WL 1047207 (N.D. Cal. Mar. 13, 2014), it was the plaintiff, not defendant, who sought to avoid a forum selection clause specifying the Osaka District Court as the court of competent jurisdiction.  Defendant Toshiba successfully moved to dismiss the case under the doctrine of *forum non conveniens*.  *Id*. at *5.  In *Oregon-Idaho Utils., Inc. v. Skitter Cable TV, Inc.*, No. 16-228 EJL, 2017 WL 3446290 (D. Id. Aug. 10, 2017), the plaintiff filed suit in a forum other than the one specified in a forum selection clause.  The court granted the non-signatory defendants'

United States District Court
Northern District of California

motion to transfer the case consistent with the forum selection clause.  *Id*. at 9.  Forward Threat has not cited to, and this Court has not found, any case holding that a non-signatory to a forum selection clause can be haled into a forum that does not have personal jurisdiction over the non-signatory.

The only analogous case cited by the parties is *Wescott v. Reisner*, No. 17-6271 EMC, 2018 WL 2463614, at *3 (N.D. Cal. June 1, 2018).  In *Westcott*, the plaintiff entered into a partnership agreement with defendant that designated California as the forum for any disputes arising out of the agreement.  The former spouse of the defendant was named as a co-defendant and moved to dismiss the action for lack of personal jurisdiction.  The *Wescott* court held that because the former spouse was not a party to the agreement, "she cannot be said to have consented to the forum selection clause; thus, she did not submit to the jurisdiction of California courts."  *Id*. at *3.  The same reasoning applies in the instant action.  Movants did not sign the Agreement, did not consent to the forum selection clause, and therefore are not subject to the jurisdiction of California courts absent other countervailing considerations.

### B.    Alter Ego Allegations

Forward Threat next contends that Movants are the alter egos of FTC Sensors and, therefore, are subject to the forum selection clause.  If a corporation is the alter ego of another corporation, courts may "pierce the corporate veil" jurisdictionally and attribute contacts of one corporation to the other for purposes of personal jurisdiction.  *Certified Bldg. Prods., Inc. v. NLRB*, 528 F.2d 968, 969 (9th Cir. 1976); *In re Chinese-Manufactured Drywall Prods. Liab. Litig*., 753 F.3d 521, 546-548 (5th Cir. 2014); *see also Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1069 n.17 (9th Cir. 2000) ("where the parent totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well").  "The standard for personal jurisdiction under an alter ego theory is lower than the standard for liability under an alter ego theory." *Television Events & Mkt., Inc. v. Amcon Distrib. Co.*, 416

F. Supp. 2d 948, 962 (D. Haw. 2006) (citing *San Mateo County Transit District v. Dearman, Fitzgerald and Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992)).  Nevertheless, at the pleading stage, conclusory allegations that a corporate entity is the alter ego of a defendant are insufficient to survive a motion to dismiss.  *RAE Systems, Inc. v. TSA Systems, Ltd*, No. 04-2030 FMS, 2005 WL 1513124, at *3 (N.D. Cal. June 24, 2005).

### 1.    Choice-of-Law

As a preliminary matter, the parties present a choice of law dispute.  Movants contend that Texas alter ego law applies, whereas Forward Threat contends that California law applies.[5]

A district court sitting in diversity jurisdiction generally applies the substantive law of the forum state, including its choice-of-law rules.  *Ferens v. John Deere Co.*, 494 U.S. 516, 524–25 (1990); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964 (9th Cir. 1993).  Consistent with this general rule, at least one district court in California has held that "[i]n diversity cases, when determining whether contacts of a subsidiary may be imputed to the parent for purposes of personal jurisdiction, courts look to the choice-of-law rules of the forum state to decide which state's substantive law on alter ego or agency applies."  *In re Hydroxycut Mktg. and Sales Practice Litig.*, 810 F. Supp. 2d 1100, 1107 (S.D. Cal. 2011).

In California, courts decide choice of law questions by applying the three-step "governmental interest" test.  *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 929 (2019); *see also Schlumberger Logelco Inc. v. Morgan Equip. Co.*, No. 94-1776 MHP, 1996 WL 241951, at *3 (N.D. Cal. May 3, 1996).

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in

---

[5] Forward Threat asserts that California law applies but states in a footnote that "[i]f the Court applies Delaware law based on the choice of law provision in the Agreement, the Delaware test is similar to the tests articulated here."  Dkt. No. 34 at 24, n.4.  The Court holds that the choice of law provision in the Agreement does not apply to the alter ego issue because alter ego liability is collateral to and not part of the parties' Agreement.  *Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1127-28 (N.D. Cal. 2011).

CASE NO.: 5:19-CV-06590-EJD
ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC, DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING JURISDICTIONAL DISCOVERY

14

1
2
3
4
5

question is the same or different.  Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.  Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

6    *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 108 (2006).[6]  "Only if both [jurisdictions]

7    have a legitimate but conflicting interest in applying its own law will the court be confronted with

8    a 'true conflict' case."  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010).

9            Under California's governmental interest test, the Court must first determine whether the

10   law of alter ego in Texas and in California differ.  The Court concludes that there is a difference.

11   Under Texas law, the party seeking to pierce the corporate view must show that (1) the alter ego

12   exercised complete control over the corporation with respect to the transaction at issue and (2)

13   such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil.

14   *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003).  In contrast, under

15   California law, there are two elements that must be alleged to invoke the alter ego doctrine:  "First,

16   there must be such a unity of interest and ownership between the corporation and its equitable

17   owner that the separate personalities of the corporation and the shareholder do not in reality exist.

18   Second, there must be an inequitable result if the acts in question are treated as those of the

19   corporation alone."  *Neilson v. Union Bank of Cal.,* 290 F. Supp. 2d 1101, 1116 (C.D. Cal 2003)

20   (quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 526 (2000)).  In short, Texas

21   requires fraud to hold a party liable for breach of contract based on an alter ego theory, whereas

22   California does not.  *Wild Rivers Waterpark Mgmt. LLC v. Katy WP Group, LLC*, No. 18-6522 JO,

23

24   [6]  Movants asserts that the three-step "governmental interest" test is inapplicable. Dkt. No. 32 at
     22.  Yet, Movants rely on cases that apply the "governmental interest" test to argue that Texas
25   alter ego law applies.  *See id*. (citing *Leitner v. Sadhana Temple of N.Y.*, No. 13-7902 MMM, 2014
     WL 12588643, at *15 (C.D. Cal. Oct. 17, 2014); *Sunnyside Dev. v. Opsys*, No. 05-553 MHP, 2015
26   WL 1876106, at *3 (N.D. Cal. Aug. 8, 2005)).

27   CASE NO.: 5:19-CV-06590-EJD
     ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC,
     DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND
28   MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING
     JURISDICTIONAL DISCOVERY

United States District Court
Northern District of California

1    2019 WL 6998669, at *3 (C.D. Cal. Feb. 26, 2019) ("Texas requires a plaintiff to establish that the

2    'alter ego' of a company perpetrated 'actual fraud' for direct personal benefit, whereas California does

3    not"); *21X Capital Ltd. v. Werra*, No. 06-4135 JW, 2008 WL 11355549, at *4 (N.D. Cal. Aug. 13,

4    2008) ("Since Plaintiffs must show actual fraud to prove alter ego liability under Texas law, the Court

5    finds that there is a meaningful conflict between the law of Texas and California on the issue.").

6    Therefore, the Court must next consider the second prong of the "governmental interest" test:  whether

7    there is a "true conflict."  *Schlumberger*, 1996 WL 241951, at *3; *Leitner*, 2014 WL 12588643, at *15.

8         For purposes of evaluating personal jurisdiction, the Court finds that there is no "true conflict"

9    because several Texas courts have articulated the alter ego test consistently with the California test.

10   *See Windecker v. Hang Wei*, No. 18-898 LY, 2020 WL 4194017, at *3 (W.D. Tex. July 21, 2020)

11   (when analyzing personal jurisdiction based on alter ego theory under Texas law, requiring unity

12   between corporation and parent such that the separateness of the corporation has ceased and holding

13   only the corporation liable would result in injustice); *Newell v. Moran Towing Corp.*, No. 09-58 TJW,

14   2009 WL 3157475, at *2 (E.D. Tex. Sept. 28, 2009) (same); *Rolls-Royce Corp. v. Heros, Inc.*, 576 F.

15   Supp. 2d 765, 787 (N.D. Tex. 2008) (same); *The Wimbledon Fund, SPC (Class TT) v. Graybox, LLC*,

16   No.  15-6633 CAS,  2016 WL 7444701, at *2 n.2 (C.D. Cal. Jun 13, 2016) ("California and Texas

17   apply substantively identical tests to determine when a party may be held liable as the alter ego of

18   another."); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 919 (W.D. Wis. 2007)

19   (applying Texas law).  Texas courts also consider a list of factors similar to California's "unity of

20   interest" factors in analyzing jurisdiction based on an alter ego theory.  For example, in

21   *Breckenridge Enterprises, Inc. v. Avio Alternatives, LLC*, No. 08-1782 M, 2009 WL 14698080, at

22   *5 (N.D. Tex. May 27, 2009), the court listed the following factors as relevant to the alter ego

23   analysis:  "(1) whether the individuals completely control the corporation; (2) the level of financial

24   integration between the individuals and the corporation; (3) whether the corporation operates with

25   grossly inadequate capital; (4) whether the individuals use the corporation's property as their own

26

27   CASE NO.: 5:19-CV-06590-EJD
     ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC,
     DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND

28   MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING
     JURISDICTIONAL DISCOVERY

United States District Court
Northern District of California

1    personal property; (5) whether the individuals use the corporation to pay personal obligations; and

2    (6) whether the individuals act as if the corporation is an extension of their own personal

3    interests."  In *EsNtion Records, Inc. v. Jones TM, Inc.*, No. 07-2027 SAL, 2008 WL 2415977, at

4    *4 (N.D. Tex. June 16, 2008), the court considered the following factors as relevant to the alter

5    ego analysis:  "(1) common stock ownership; (2) common directors or officers; (3) common

6    business departments; (4) consolidated financial statements or tax returns; (5) one corporation

7    finances the other; (6) one corporation caused the incorporation of the other; (7) one corporation

8    operates with grossly inadequate capital; (8) one corporation pays the salaries and other expenses

9    of the other; (9) one corporation receives no business except that given to it by the other; (10) one

10   corporation uses the other's property as its own; (11) the daily operations of the two corporations

11   are not kept separate; and (12) one corporation does not observe the basic corporate formalities,

12   such as keeping separate books and records and holding shareholder and board meetings."  *See*

13   *also Berry v. Lee*, 428 F. Supp. 2d 546, 554 (N.D. Tex. 2006) (listing factors weighing in favor of

14   finding jurisdiction based on an alter ego theory under Texas law as "common business names,

15   business departments, offices, directors or officers, employees, stock ownership, financing,

16   accounting, and payment of wages by one corporation to another corporation's employees and the

17   rendering of services by employees of one corporation on behalf of another corporation").  Under

18   California law, "[t]he 'unity of interest' element requires 'a showing that the parent controls the

19   subsidiary to such a degree as to render the latter the mere instrumentality of the former.'"

20   *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 462 (N.D. Cal. 2019) (quoting *Ranza v. Nike, Inc.*,

21   793 F.3d 1059, 1073 (9th Cir. 2015)).

22          California courts generally consider the following factors to determine whether the unity of

23   interest element is satisfied:  (1) the commingling of funds and other assets of the entities, (2) the

24   holding out by one entity that it is liable for the debts of the other, (3) identical equitable

25   ownership of the entities, (4) use of the same offices and employees, (5) use of one as a mere shell

26

United States District Court
Northern District of California

or conduit for the affairs of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of segregation of corporate records, and (9) identical directors and officers. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538-39 (2000).  Because Texas and California evaluate nearly indistinguishable sets of factors in evaluating personal jurisdiction based upon an alter ego theory, there is no "true conflict" and accordingly, the Court will apply California law.

### 2.    Application of California's Unity of Interest Factors

There are several factors indicative of a unity of interest and ownership between FTC Sensors and Movants.  Pridham is the CEO of all Defendants, including the parent corporation, DHE.  Dkt. No. 34 at 16.  FTC Sensors shares other employees with DHG.  *Id.* at 17.  FTC Sensors shares a principal place of business with some Movants.  *Id.*  FTC Sensors's financial and license agreement records are kept by DHG.  *Id.*  FTC Sensors communicates with Forward Threat via DHG.  *Id.*  Moreover, FTC Sensors was not capitalized at its formation or at any time thereafter.

### a.    Control

In response, Movants do not deny that Pridham is the CEO of all Defendants.  Instead, Movants deny that Pridham "controls" each entity.  DelGiorno Decl. ¶ 79.  Movants represent that they "are owned and managed in accordance with their corporate structures and the roles of various persons therein."  *Id.*  The representation is not meaningful because not one of the Movants is a corporation.  Instead, Movants are each set up as limited liability companies.  *Id.* ¶ 55.  Movants further assert that "Mr. Pridham is involved in the management for each of these entities consistent with his duties and responsibilities as CEO of each."  *Id.*  This representation too fails to establish Pridham lacks control.  After all, Pridham is a managing member of several Movants and certain Movants are managing members of other Movants, as evidenced in the 2013 Certification of Formation for DHG identifying Pridham, Conner Mowles ("Mowles") and

DelGiorno as the only managing members (Dkt. No. 34-6); the 2019 Texas Franchise Tax Public Information Report identifying DHE as the only manager of DHG (Dkt. No. 34-11); the 2013 Certification of Formation for MPH identifying Pridham, Mowles and DelGiorno as the only managing members (Dkt. No. 34-12); the 2017 and 2019 Texas Franchise Tax Public Information Reports identifying DHE as the only manager of MPH (Dkt. Nos. 34-14, 34-16); the 2015 Certification of Formation identifying MPH as the only manager MTR (Dkt. No. 34-17); the 2018 Texas Franchise Tax Public Information Report identifying MPH as the only manager of FTC Sensors (Dkt. No. 34-19); the 2019 Texas Franchise Tax Public Information Report identifying MIPF as the sole manager of FTC Sensors (Dkt. No. 34-20); the 2016 Certification of Formation identifying Pridham as the sole managing member of DHE (Dkt. No. 34-21); the 2019 Texas Franchise Tax Public Information Report identifying Pridham, DelGiorno and Lee Bradlee Sheafe as the only officers of DHE (Dkt. No. 34-24); the 2016 Certification of Formation identifying MPH as the only managing member of MIPF (Dkt. No. 34-25); and the 2019 Texas Franchise Tax Public Information Report identifying MPH as the only manager of MIPF (Dkt. No. 34-26).

Movants are correct that there must be "pervasive" control of an entity to establish it is the alter ego of another. *See Ranza*, 793 F.3d at 1073 (in the parent-subsidiary context, the unity-of-interest prong "envisions pervasive control over the subsidiary"). But as discussed above, Pridham's various roles in Movants certainly give him a degree of control over Movants. It is not unreasonable to assume at the pleading stage that this degree of control is "pervasive" control because Movants are limited liability companies with only a few managing members. Indeed, the transaction at issue exemplifies what could reasonably be characterized as pervasive control. In an attempt to down-play Pridham's control in the transaction at issue, Movants explain that Pridham was acting in his capacity as CEO of DHG on behalf of its client MPH when negotiating with FTC Sensors. DelGiorno Decl. ¶ 23. Movants also explain that MPH created and selected MTR to

hold the Patents.  But when these facts are construed in Forward Threat's favor[7], they serve to underscore rather than diminish Pridham's complete control over the transaction because he admittedly acted in multiple capacities.  Pridham was arguably the ultimate actor for DHG, MPH, MTR and FTC Sensors.  Pridham's imprecise use of "we" and "I [sic] my client" in his emails communications with Forward Threat also provides circumstantial evidence of Pridham's ultimate authority to orchestrate the purchase as he alone deemed appropriate.  The control factor supports Forward Threat's alter ego theory.  *Taurus IP*, 519 F. Supp. 2d at 920-21.

### b.    Shared Employees

Movants do not dispute that Monica Gutierrez, an employee of DHG, communicated with Zajac for tax and business purposes.  Instead, Movants explain that it would have been within Ms. Gutierrez's responsibilities at DHG to communicate on behalf of FTC Sensors with Forward Threat about "ministerial tax and business issues relating to payments due and/or being sent or received."  DelGiorno ¶ 84.  Although Movants' explanation may be reasonable, it is equally plausible that Ms. Gutierrez is a shared employee of  DHG and FTC Sensors.  At this stage in the proceedings, factual disputes must be construed in Forward Threat's favor.  *Freestream Aircraft*, 905 F.3d at 602.  This factor supports Forward Threat's alter ego theory as among Pridham, FTC Sensors and DHG.

### c.    Shared Offices And Equipment

Movants do not deny that some of Movants share offices and equipment.  Specifically, DHG and DHE share office space and equipment in Dallas, Texas.  DelGiorno Decl. ¶ 94.  This lends some support to Forward Threat's theory that Pridham, DHG and DHE are alter egos.  MIPF and FTC Sensors share office space and equipment in Plano, Texas (*id.*), which similarly lends

---

[7] When deciding a motion to dismiss for lack of personal jurisdiction, factual disputes are construed in the plaintiff's favor.  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018).

1   some support to Forward Threat's theory that Pridham, MIPF and FTC Sensors are alter egos.  All

2   Movants, however, are not connected by shared offices and equipment.  Therefore, this factor does

3   not lend support Forward Threat's broader theory that all Movants are alter egos of FTC Sensors.

### d.      Company Records

5        Forward Threat alleges that DHG, not FTC Sensors, "maintained the books and records of

6   licenses and revenues related to the Patents, as indicated by Pridham's representation to Plaintiff

7   that [DHG's] financial controller would need to run the report to ascertain such information."

8   Compl. ¶ 54.  Movants do not deny this allegation.  Instead, Movants explain that they maintained

9   FTC Sensors's financial books and records as part of the services provided by their contractual

10  relationship and that FTC Sensors "was a small entity with no financial employees" of its own.

11  DelGiorno Decl. ¶ 86.  Movants also represent that FTC Sensors had its own bank account, and

12  thus FTC Sensors's financial record was also maintained and updated by its bank.  *Id.*   Moreover,

13  Movants represent that they keep their own company records or have contractual arrangements for

14  such records to be kept on its behalf.  *Id.*  ¶ 97.  Movants also represent that "[t]here has been no

15  comingling of corporate records among the Defendant parent and subsidiary entities."  *Id*. ¶ 98.

16  Again, Movants' explanation is not unreasonable and there is no evidence of pervasive

17  commingling of company records among all the Movants.  Nevertheless, the Court must construe

18  the evidence in Forward Threat's favor.  That DHG maintained FTC Sensors's books and records

19  supports, although only slightly, a reasonable inference that FTC Sensors is a mere shell or

20  conduit for the affairs of DHG and that the entities may have failed to segregate their corporate

21  records.

### e.      Communications via DHG

23       Movants do not dispute that Pridham communicated with Forward Threat via DHG.

24  DelGiorno Decl. ¶ 55 ("All dealings . . . were conducted by phone or email from Texas,

25  presumably from [DHG's] office in Dallas"), ¶ 85.  It is also undisputed that Forward Threat was

United States District Court
Northern District of California

United States District Court
Northern District of California

1    required to send notices under the Agreement to a DHG email address rather than a FTC Sensors

2    email address. *Id*. ¶ 87.  Movants, however, explain that routing communications through DHG

3    was consistent with the fact that FTC Sensors was DHG's client.  Id. ¶¶ 85, 87.  Again, Movants'

4    explanation is not unreasonable.  Nevertheless, the absence of any communications directly

5    between Forward Threat and FTC Sensors lends at least some support to Forward Threat's alter

6    ego theory insofar as it suggests DHG was involved in FTC Sensors's day-to-day operations and

7    that the two entities failed to maintain genuine separateness.  *See Unocal*, 248 F.3d at 927 (stating

8    that alter ego test is satisfied where the parent dictates every facet of the subsidiary's business-

9    from broad policy decisions to routine matters of day-to-day operations).

10                              **f.       Undercapitalization**

11           Forward Threat contends that FTC Sensors was undercapitalized because FTC Sensors was

12    not funded when it signed the Agreement and never held enough cash to make the contractual

13    payments of $500,000 by October 15, 2016 and $500,000 by October 15, 2017.  Movants do not

14    deny that FTC Sensors lacked cash assets.  Instead, Movants explain that FTC Sensors "was

15    capitalized with its patents and it has the ability to request funds form its parent entity."

16    DelGiorno Decl. ¶ 96.  Undercapitalization, however, may be reasonably inferred from FTC

17    Sensors's lack of ready-access to cash funds to fulfill its contractual obligations to Forward

18    Threat.  This undercapitalization strongly supports Forward Threat's alter ego theory. *Nilsson,*

19    *Robbins, et al. v. Louisiana Hydroelec*, 854 F.2d 1538, 1543-1544 (9th Cir. 1988).  "In fact, the

20    California Supreme Court has held that undercapitalization alone will justify piercing the

21    corporate veil." *Id*. (citing *Minton v. Cavaney,* 56 Cal.2d 576, 364 P.2d 473, 15 Cal.Rptr. 641

22    (1961)).

23           Having considered the unity of interest factors above, Court finds that Forward Threat has

24    presented evidence tending to support its alter ego theory.  And although the California Supreme Court

25    has held that undercapitalization alone will justify piercing the corporate veil, the Court finds that

26

27    CASE NO.: 5:19-CV-06590-EJD
      ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC,
      DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND
28    MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING
      JURISDICTIONAL DISCOVERY

1  record is not sufficiently developed to enable the Court to determine whether the alter ego test has

2  been met.[8]  Whether jurisdictional discovery should be authorized is discussed separately below in

3  section "D" of this Order.

4      **C.**    **Whether there is General Jurisdiction over Movants**

5      Forward Threat next contends that aside from the forum selection clause and their alter ego

6  status, Movants are subject to the general jurisdiction of this Court.  According to Forward Threat,

7  Movants, particularly MPH, regularly litigate in this district through subsidiaries.   Dkt. No. 34 at

8  24 (citing McHale Dec. ¶¶ 7–13, Exs. 9–10). These subsidiaries allegedly file patent infringement

9  suits asserting patents they have purchased or licensed through agreements arranged by Pridham

10  that are similar to the Agreement at issue in this case.

11      Forward Threat's general jurisdiction argument is unpersuasive.  Even accepting as true

12  Forward Threat's characterization of MPH's subsidiaries as "litigating affiliates" of Movants,

13  Forward Threat offers no legal basis for attributing these affiliates' contacts with this forum to any

14  of the Movants or Pridham.  Forward Threat's argument might have more force if the litigating

15  subsidiaries were alter egos of the Movants or Pridham for the reasons already discussed above.

16  But Forward Threat has made no attempt to make that showing.

17      **D.**    **Plaintiff's Request For Jurisdictional Discovery**

18      "A court may permit discovery to aid in determining whether it has personal jurisdiction."

19  *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1093 (C.D. Cal.

20  2010) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir.

21  1977)). "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and

22  based on bare allegations in the face of specific denials made by the defendants, the Court need

23

24  _____

[8]  Because the facts relating to the unity of interest factors are insufficiently developed to establish Movants are alter egos of FTC Sensors, it is unnecessary for the Court to continue to the second

25  prong of the alter ego analysis.

26

27  CASE NO.: 5:19-CV-06590-EJD
ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC,
DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND

28  MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING
JURISDICTIONAL DISCOVERY

United States District Court
Northern District of California

not permit even limited discovery. . . ." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat. Bank,* 49 F.3d 555, 562 (9th Cir. 1995).  Discovery should be granted, however, "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Wells Fargo*, 556 F.2d at 430 n. 24.

Here, a more satisfactory showing of jurisdictional facts is necessary, particularly on the following subjects:  the capitalization and corporate structure of Movants; their management and operations, including financial operations; the accounts of Movant; methods and procedures for maintaining corporate records and minutes; and agreements between and among Movants.  A more satisfactory showing of jurisdictional facts is also necessary as to the second prong of the alter ego analysis, namely whether upholding the separateness of Movants and FTC would result in an injustice, including a fraud against Plaintiff.  The allegations of siphoning are particularly weak. Discovery into these areas is appropriate.  In *Ranza* and several other cases relied upon by Movants, the court authorized jurisdictional discovery before ultimately dismissing a defendant for lack of personal jurisdiction.  *Ranza*, 793 F.3d at 1067  (after discovery, finding no alter ego although parent "heavily involved" in sub's operations" including ensuring consistent marketing of the brand and some sub employees reporting to parent supervisors); *see also Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (after authorizing discovery, holding that evidence of a parent company's ownership of its subsidiary, overlapping officers and directors, and consolidated annual financial reporting not sufficient control for disregarding corporate entity); *U.S. v. Team Finance*, No. 16-432 JRG, 2019 WL 3976364, *7 (E.D. Tex. Aug. 22, 2019) (after conducting evidentiary hearing, holding that common board members, common website and management of affiliated entities through common board members and employees insufficient for alter ego); *Wapp Tech Ltd. P'ship v. Micro Focus Intl.*, 406 F. Supp. 3d 585, 598 (E.D. Tex. 2019) (after jurisdictional discovery, holding that parent setting financial goals and requiring financial

CASE NO.: 5:19-CV-06590-EJD
ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC, DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING JURISDICTIONAL DISCOVERY

United States District Court
Northern District of California

1   reporting from sub and parent officer on both boards insufficient); *PHC–Minden v. Kimberly–*

2   *Clark*, 235 S.W.3d 163, 175 (Tex. 2007) (after parties conducted extensive jurisdictional

3   discovery, finding no alter ego due to stock ownership, a duplication of some or all directors or

4   officers, or an exercise of the control that stock ownership gives to stockholders).

5        There are circumstances when jurisdictional discovery is unwarranted.  For example, in

6   *Barone v. Intercontinental Hotels Grp.*, No. 15-4990 JCS, 2016 WL 2937502, at *8 (N.D. Cal.

7   May 20, 2016), it was "clear" that further discovery would not demonstrate facts sufficient to

8   constitute a basis for jurisdiction based on an alter ego theory.  In *Bar Grp., LLC v. Bus.*

9   *Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524, 562 (S.D. Tex. 2017) the court denied

10  jurisdictional discovery because plaintiff offered only "speculation as to jurisdiction" and was

11  waging a "fishing expedition" into jurisdictional facts.  *See also De Bree v. Pacific Drilling*

12  *Services*, No. 18-4711 FHS, 2019 WL 6186526, at *4 (S.D. Tex., Oct. 29, 2019) (denying

13  jurisdictional discovery because allegations of alter ego were conclusory and there were no facts,

14  allegations or argument set forth by plaintiff that would support or warrant further inquiry); *DVI,*

15  *Inc. v. Superior Court*, 104 Cal. App. 4th 1080, 1097 (2002) (rejecting alter ego theory because

16  "interlocking corporate officers and directors are normal").

17       Here, FTC Sensors's alter ego allegations have substance, particularly as to DHG, even

18  though at present, they are insufficient to support the exercise of jurisdiction over Movants.  In

19  addition to Pridham's various and significant roles in all of the Movants, FTC Sensors has alleged,

20  among other things, that Forward Threat's financial and license agreement records are kept by

21  DHG; FTC Sensors communicates with Forward Threat via DHG; and the two entities share

22  employees.  FTC Sensors also alleges that Forward Threat was not funded at its inception or any

23  time thereafter, even though Forward Threat was contractually bound to make a $1 million

24  guaranteed payment to FTC Sensors.  These allegations are not speculative or conclusory and

25  discovery may very well lead to facts that would support the exercise of personal jurisdiction over

26  

27  CASE NO.: 5:19-CV-06590-EJD
    ORDER DENYING DEFENDANTS DOMINION HARBOR ENTERPRISES, LLC,
    DOMINION HARBOR GROUP, LLC, MONUMENT PATENT HOLDINGS, LLC AND

28  MONUMENT IP FUND 1, LLC'S MOTION TO DISMISS; AUTHORIZING
    JURISDICTIONAL DISCOVERY

1   Movants as alter egos of Forward Threat.  Therefore, the Court will allow jurisdictional discovery.

2   *Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1135 (remanding case to allow party seeking to

3   pierce corporate veil the opportunity develop the record and make a prima facie showing of

4   jurisdictional facts).

5   **V.      CONCLUSION**

6         For the reasons set forth above, Movants' motion to dismiss for lack of personal

7   jurisdiction is DENIED without prejudice to renew the motion after Forward Threat has had a full

8   and fair opportunity to complete jurisdictional discovery consistent with this order.  Only

9   jurisdictional discovery requests may be propounded on Movants.  Any disputes regarding

10  jurisdictional discovery are referred to the magistrate judge.

11        **IT IS SO ORDERED.**

12  Dated:  September 16, 2020

13   

14                     EDWARD J. DAVILA
                   United States District Judge